UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ALICE LORENE PETTIT, et al.,<br><br>     Plaintiffs,<br><br>  v.<br><br>CITY OF ORTING, et al.,<br><br>     Defendants. | CASE NO. C12-5744 BHS<br><br>ORDER GRANTING DEFENDANTS' MOTION TO DISMISS § 1983 CLAIMS AND DISMISSING ANY STATE LAW CLAIMS FOR LACK OF JURISDICTION |

  This matter comes before the Court on Defendants' motion to dismiss (Dkt. 8). The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants the motion.

**I. PROCEDURAL HISTORY**

  On August 13, 2012, Plaintiffs Alice Lorene and Theodore M. Pettit (the "Pettits") filed a complaint for damages in Pierce County Superior Court against the City of Orting, the Orting Police Department, and "John Doe" police officers 1-5 (collectively, "Defendants"). Dkt. 1-1. The Pettits sued for conversion of their canine companion Lily, negligent/intentional infliction of emotional distress of Mrs. Pettit related to the situation

with their canine, and 42 U.S.C. § 1983 claims for violations of their Fourth and Fourteenth Amendment rights under the United States Constitution for unlawful seizure, and what appears to be allegations involving violations of deprivation of their property (Lily) without due process of law. Dkt. 1-1 at 2-5.

On August 13, 2012, Defendants filed a notice of removal to this Court based on federal question jurisdiction. Dkt. 1. On November 12, 2012, Defendants filed a motion to dismiss the Pettits' complaint pursuant Fed. R. Civ. P. 12(b)(6). Dkt. 8. The noting date for the motion was extended to December 28, 2012. Dkt. 12. Accordingly, the Pettits were to file a responsive brief by December 24, 2012, the Monday before the noting date. *See* Local Civil Rule 7(d)(3).

The Pettits failed to file a responsive brief by the December 24, 2012 due date. On December 28, 2012, Defendants filed a reply brief asking the Court to dismiss the Pettit's action for the reasons stated in their earlier motion and for the Pettits' failure to respond. *See* Dkt. 16. On the same day, the Pettits filed a responsive brief in opposition to Defendants' motion to dismiss, supplying no reason for their delinquent response. Dkt. 15.

After reviewing the briefing, the Court determined that pursuant to the Federal Rules it could refuse to consider the Pettits' delinquent response and dismiss their case as requested by Defendants. However, the Court concluded that the Pettits had potentially pled viable 42 U.S.C. § 1983 claims that could survive a motion to dismiss. *See* Dkt. 17. Therefore, in the interest of the efficient use of judicial resources and fairness, the Court reserved ruling on this motion until Defendants had a full and fair opportunity to respond

to the Pettits' response. *Id.* at 7-8. On January 16, 2013, Defendants filed their supplement reply brief. Dkt. 18.

## II. FACTUAL BACKGROUND[1]

On or about June 14, 2012, the Pettits' canine companion, Lily, was delivered to Sumner Veterinary Hospital, P.S. ("Hospital") by members of the Orting Police Department. Dkt. 1-1 at 2. The canine was delivered to the Hospital after the Orting Police arrested the Pettits' son, Thomas Pettit ("Thomas"), who was watching Lily while his parents were on vacation. *Id.* An Information filed on June 15, 2009, charged that Thomas

> did unlawfully, feloniously, and intentionally inflict substantial pain on, cause physical injury to, or kill an animal, to-wit: "LILY", a female Doberman Pincher, by means causing undue suffering, or force a minor to inflict unnecessary pain, injury, or death on the animal, contrary to RCW16.52.205(1)(b)(c), and against the peace and dignity of the State of Washington.

Dkt. 9-1 at 2.

The Pettits did not learn of the incident until June 18, 2012. *Id.* They returned from their vacation on or about June 22, 2012, due to problems with their vehicle. *Id.* Immediately upon their return they went to the Hospital. *Id.* at 3. Their request for the

---

[1] For the purposes of this Fed. R. Civ. P. 12(b)(6) motion, the Court must accept all the facts in the Pettits' complaint as true. *See Parks School of Business, Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Therefore, the Court adopts the allegations of fact contained in the Pettits' complaint. *See* Dkt. 1-1. In addition, the Court takes judicial notice of additional facts from public documents, which Defendants have submitted. Fed. R. Evid. 201(d). A court may consider documents referenced in the complaint in ruling on a 12(b)(6) or 12(c) motion and doing so does not convert the motion into one for summary judgment. *See, e.g., Stec Elec. Sec. Litig.*, 89 F.3d 1399, 1405 n.4 (9th Cir. 1996).

return of Lily was denied, as were their requests to see Lily and acquire information about her condition and treatment. *Id*.

The Pettits made numerous calls to the Orting Police Department requesting the return of Lily, and the Police Department referred them to the Pierce County Prosecuting Attorney's office ("Prosecutor's Office"). *Id*. While attempting to acquire the return of Lily, Mrs. Pettit spoke with a member of the Orting Police Department, who identified himself as the Chief of Police. *Id*. at 4. According to Mrs. Pettit's, this individual told her that if she continued to seek the return of Lily, he would have her investigated by animal control and have all of her other animal companions taken away. *Id*. He further advised that Lily would be permanently placed with one of his officers. *Id*. When the Pettits' counsel was contacted by the Prosecutor's Office, he was advised that they had not placed a hold on Lily. *Id*. at 3. As a result of Defendants' alleged conduct, the Pettits claim they suffered injuries, including severe emotional distress. *Id*. at 5.

On July 28, 2009, Mrs. Pettit petitioned the Pierce County Superior Court for the return of Lily. Dkt. 9-3. In that petition, Mrs. Pettit asked the court to reserve ruling on the disposition of Lily at the sentencing of their son (for first degree animal cruelty) so that she could collect and submit additional evidence to support her ownership, specifically asking for at least "three weeks to collect and submit evidence and documentation for the evidentiary hearing." *Id*. at 4-5. On August 5, 2009, Thomas Pettit pled guilty to animal cruelty in the first degree. *See* Dkt. 9-4. He was sentenced on that same day. *See* Dkt. 9-5. On August, 24, 2012, the Pierce County Superior Court conducted a hearing and ruled on Mrs. Pettit's July 28, 2012 motion for the return of

Lily. Dkt. 9-6. The Court found, in part, that Mrs. Pettit was the owner of Lily and ordered the canine's return to her. Dkt. 9-6.

## III. DISCUSSION

Defendants argue that all of the Pettits' claims must be dismissed because they fail to state a claim upon which relief can be granted. Those claims include both state and federal claims. The Pettits maintain they have viable causes of action.

**A.      Motion to Dismiss Standard**

Motions to dismiss brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under such a theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A court accepts the factual allegations in the complaint as true for purposes of deciding the motion to dismiss. *Id*. To survive a motion to dismiss, the complaint does not require detailed factual allegations but must provide the grounds for entitlement to relief and not merely a "formulaic recitation" of the elements of a cause of action. *Bell v. Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. at 555-56 (internal citations omitted). Plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.

In the event a court finds that dismissal is warranted, the court should grant the plaintiff leave to amend unless amendment would be futile. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

### B.  42 U.S.C. § 1983 Claims

Although Defendants seek dismissal of all of the Pettits' claims, only their § 1983 claims give this Court original jurisdiction to hear their case. If a § 1983 claim exists, the court may retain jurisdiction over state law claims through exercise of supplemental jurisdiction. Thus, the Court will first determine whether the Pettits state a § 1983 cause of action which meets the standards to overcome Defendants' 12(b)(6) motion.

Defendants argue that the Petitts have alleged ostensibly that Defendants violated their substantive due process rights when the officers, pursuant to statutory authority (RCW 16.52.085), rescued their dog from harm and then transported her back to them by court order. Dkt. 8 at 13. Defendants contend they acted pursuant to statutory authority, and thus the Pettits' claims are barred pursuant to 16.52.085(7), which shelters officers from all civil and criminal liability when acting as they did here. *Id.* at 7-8.

The Pettits maintain that Defendants did not fully comply with requirements of 16.52.085, and thus conclude, without a single case citation to support their claim, that the Pettits are not barred from pursuing their suit. Specifically, the Pettits maintain that the officers failed to fulfill the warrant requirement under RCW 16.52.085(1) and did not provide written notice as required by RCW 16.52.085(3), even after Defendants knew that the Pettits claimed ownership of Lily. Dkt. 15 at 3. Therefore, the Pettits argue that the Defendants are not entitled to the protections of RCW 16.52.085(7). *Id.*

Furthermore, the Pettits argue that Defendants misconstrue their § 1983 claims. Dkt. 15 at 6. The Pettits maintain that their § 1983 claims are based on attempts of a city official "under the color of the authority of his position to intimidate the Plaintiffs and

induce them to cease their efforts to recover Lily." *Id.*  They construe these actions as an attempt to deprive them of their "property interest in Lily," conduct which they maintain legally entitles them to recovery.  *Id.*

In Defendants' reply, which focuses on the Pettits' § 1983 claims, they argue that the Pettits have not pled sufficient facts to proceed to trial.  Defendants maintain the Pettits have not suffered either procedural or substantive due process violations.  Dkt. 18 at 3-10. Nor did they sustain a Fourth Amendment violation.  *Id.*  Additionally, Defendants argue that even assuming they had committed a constitutional violation, they are entitled to qualified immunity because the Defendants acted pursuant to statutory law.  *Id.* at 10-11.  Should it turn out they were reasonably mistaken in their conduct, Defendants argue they are still entitled to qualified immunity.  *Id.*

**1.     Elements of a U.S.C. § 1983 Claim**

Section 1983 is a procedural device for enforcing constitutional provisions and federal statutes; the section does not create or afford substantive rights.  *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).  In order to state a claim under § 1983, a plaintiff must demonstrate that (l) the conduct complained of was committed by a person acting under color of state law and that (2) the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or by the laws of the United States.  *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986).  Section 1983 is the appropriate remedy only if both elements are satisfied.  *Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985).  In addition, a plaintiff must allege facts demonstrating that individual defendants caused, or

personally participated in causing, the alleged harm. *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981).

**2.     Substantive Due Process**

The core of substantive due process is protection against arbitrary governmental action. *See County of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998). "[O]nly the most egregious official conduct can be said to be arbitrary in the constitutional sense." *Collins v. Harker Heights*, 503 U.S. 115, 129 (1992). To implicate substantive due process, a state actor must "shock the conscience" and violate the "decencies of civilized conduct." *Rochin v. California*, 342 U.S. 165, 172-73 (1952). This notion of conscious-shocking behavior in the constitutional sense does not merely duplicate the "traditional category of common-law faults." *Lewis*, 523 U.S. at 848 (1998). Substantive due process does not create a body of constitutional law imposing liability whenever a state actor causes harm. *See Paul v. Davis*, 424 U.S. 693, 701 (1976) (Fourteenth Amendment is not a "font of tort law to be superimposed upon whatever systems may already be administered by the states").

Based on their complaint, the Pettits allege that their constitutional rights were violated by a person or persons acting under the color of state law, namely "John Doe" police officers and/or "a member of the Orting Police Department, who identified himself as the Chief of Police." Dkt. 1-1 at 2. Additionally, the Pettits allege that the individual who identified himself as the Chief of Police

> told Plaintiff that [if] she continued to seek the return of LILY [he] would have her investigated by animal control authorities and all her other animal

companions would be taken away. He further advised that LILY would be placed permanently with one of his officers.

*Id*. at 4.  The Pettits claim Defendants violated their Fourth and Fourteenth Amendment rights by unlawfully seizing their property.

In their complaint, the Pettits allege that the City of Orting, by and through the Orting Police Department, failed to respond to their requests for the return of their property.  *Id*. at 5.  "Defendant "John Doe" police officers 1-5" ("persons" under 42 U.S.C. § 1983) deliberately attempted to threaten and intimidate the Pettits with government action, if the Pettits continued to pursue the legitimate recovery of their property.  *Id.*  As a result, the Pettits maintain they suffered emotional distress and have a viable constitutional claim under 42 U.S.C. § 1983.  Dkt. 15 at 5-6.

Defendants argue the alleged mistreatment and threats the Pettits suffered does not rise to the level of Fourteenth Amendment substantive due process violation.  Dkt. 18 at 7.  Defendants maintain that even when torture or abuse by police officers has been alleged, the standard for showing a Fourteenth Amendment substantive due process violation is "quite demanding."  *Id.*  (*citing Stoot v. City of Everett*, 582 F.3d 910, 928-29 (9th Cir. 2009) (allegations of improper promises and threats by an officer toward a developmentally delayed young boy in the course of an investigation insufficient to survive summary judgment); *but see Cooper v. Dupnik*, 963 F.2d 1220, 1248-49 (9th Cir. 1992) (finding that hours of mistreatment, coupled with "sophisticated psychological torture" tantamount to a "twentieth-century inquisitorial version of the Star Chamber" was conscious shocking)).

Here, the Court finds that the officer's alleged threats and intimidating statements do not constitute coercive interrogation and fall shy of any "sophisticated psychological torture" prohibited by the Fourteenth Amendment. Moreover, courts have been hesitant to view threats of a future action as a constitutional violation. *See, e.g., Brittain v. Hansen*, 451 F. 3d 982, 994-95 (9th Cir. 2006) (Police officers "hostile, aggressive, and condescending threats of arrest during dispute did not shock the conscious.").

As Defendants observe in *Brittain*, the court held that a police officer"s interference with a mother's exercise of court-ordered visitation rights did not violate substantive due process and was not conscience-shocking. Dkt. 18 at 8-9 (*citing Brittain*, 451 F. 3d at 995). By extension, the Defendants argue, "assuming Plaintiffs had some right to visit Lily when she was being cared for by Sumner Veterinary Hospital during the pendency of Thomas Pettit's criminal matter, any interference with that right by an officer—even if hostile, aggressive, or condescending—would not violate substantive due process." *Id*. at 8. Defendants maintain "[t]his is, in large part, because substantive due process is ordinarily reserved for those rights that are 'fundamental.'" *Id*. at 8-9 (*citing Washington v. Glucksberg*, 521 U.S. 702, 720-71 (1997); *Albright v. Oliver,* 510 U.S. 266, 272 (1994) ("The protections of substantive due process have, for the most part, been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity.")). Thus, Defendants argue, just as courts have held that interference with parents' visitation of their children was not a violation of substantive due process, neither would interference with Plaintiffs' ability to see Lily. *Id*. at 9.

The Court agrees with the Defendants' analysis that the Pettits' allegations do not rise to the level of mistreatment that constitutes a substantive due process violation. Assuming the allegations are true, such treatment would indeed be at least unprofessional as well as unpleasant, however, the case law does not clearly establish that such conduct is unlawful in the constitutional sense. The Pettits have failed to state a § 1983 action on this basis.

### 3. Qualified Immunity

Government officials who are sued in their individual capacities have qualified immunity from suit absent evidence of incompetence or knowing violation of the law. *See Anderson v. Creighton*, 483 U.S. 635, 638 (1987). This rule is intended to "balance two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and the liability when they perform their duties reasonably." *Pearson v. Callahan,* 555 U.S. 223, 231 (2009). Qualified immunity is not merely a defense to liability; it is an entitlement to immunity from suit in the first place. *See Devereaux v. Perez*, 218 F.3d 1045, 1052 (9th Cir. 2000), *reh'g en banc*, *Devereaux v. Abbey*, 263 F.3d 1070 (9th Cir. 2001).

When analyzing a motion containing a qualified immunity defense, the court considers (1) whether a violation of a constitutional right has been shown, and (2) whether a reasonable official would have recognized that his actions violated a clearly established law. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151 (2001*), overruled in part by Pearson v. Callahan*, 555 U.S. 223, 236 (2009). The plaintiff has the initial

burden of proving the right was clearly established. *Harlow v. Fitzgerald*, 475 U.S. 800, 818 (1982).

Under *Pearson*, trial court judges have the discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 818 ("The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand"). A plaintiff must be able to satisfy both prongs of the analysis, and absent a showing of a constitutional violation, there is no need to consider the second prong of the qualified immunity analysis. *Id*.

Defendants argue that should a constitutional violation be demonstrated, it would not be of "clearly established right" such that a reasonable officer would believe his conduct was unlawful, thus they are entitled to qualified immunity. Dkt. 18 at 3.

With regard to the Pettits' alleged procedural due process allegations, they do not meet their initial burden of showing clearly established law. The Pettits complain they were "not provided notice or advised how they could proceed to ensure the return of their dog, Lily." *Id*. The Pettits clarify in their response to Defendants' motion and in the attached declaration of Mrs. Pettit that their § 1983 claims are not based on the initial seizure of Lily. Dkt. 15 at 5-6. Rather, as the quote above from the Pettis indicates, their § 1983 claims are based on what occurred after the initial seizure of Lily. *See supra*. Thus, the Pettits do not dispute that their procedural due process rights were violated by

lack of pre-deprivation process.  Based on the clarification in the Pettits' response and on their complaint, it appears alleged procedural due process violation stems from what the Pettits perceive as deliberately intimidating tactics of someone who identified himself as the Police Chief and whose conduct ultimately delayed the return of Lily (*i.e.* temporarily depriving them of their property without due process).

Based on the record, the period of delay at issue was from approximately June 26, 2012, when the Pettits allege the Defendants knew of their claim to ownership of Lily (Dkt. 15 at 3) until July 28, 2012, about one month, when Mrs. Pettit petitioned the Pierce County Superior Court for the return of Lily.  Dkt. 9-3.  In that petition, Mrs. Pettit asked the court to reserve ruling on the disposition of Lily at the sentencing of their son and requested at least "three weeks to collect and submit evidence and documentation for the evidentiary hearing." *Id*. at 4-5.

The Pettits argue that RCW 16.52.085 does not bar their recovery, essentially because the police did not follow subsection (2) of that statute, which requires authorities to remove the animal with a warrant where no warrant issued in this case.  Dkt. 15 at 3.  Nor, they argue, did police follow subsection (3), which requires authorities to provide the owner with written notice of removal, the circumstance of the removal and the remedies available to the owner. *Id*.

However, even if police did not strictly follow the statutory scheme set out in RCW 16.52.085, the Pettits do not meet their initial burden of demonstrating that under the circumstances of this case clearly established law shows that the temporary, one-month delay in their return of Lily resulted in a constitutional violation.  Specifically, the

Pettits have failed cite clearly established law showing that the Defendants should have known their conduct was unreasonable where (1) a pre-deprivation hearing was impracticable, as the dog was seized due to exigent circumstances; (2) the Pettits do not dispute the lawfulness Lily's initial seizure; (3) the canine was kept at the veterinary hospital until the state fulfilled its obligation of ensuring that the animal was restored to health and a hearing could be held to determine that, upon return to its owner, Lily would not suffer abuse or neglect; and (4) an adequate post-deprivation process was had, where the court granted Mrs. Pettit an extension to gather additional evidence, held an evidentiary hearing, and ordered the return of Lily to Mrs. Pettit. Though Mrs. Pettit may not have been provided notice pursuant to RCW 16.52.085, she ultimately was put on notice of what occurred with Lily, exercised her right to a hearing and was granted the return of her canine companion. Even if a prosecuting attorney told Mrs. Pettit that no hold had been placed on Lily, there is no indication in the record that police did not have the authority to place a protective hold on the canine pending resolution of the conditions of Lily's return to the Pettits.

In sum, the Pettits do not provide any case law to support that under the circumstances of this case "a reasonable official would have recognized that his actions violated a clearly established law"[2] such that his conduct, which allegedly resulted in a

---

[2] When analyzing a motion containing a qualified immunity defense, the court considers (1) whether a violation of a constitutional right has been shown, and (2) whether a reasonable official would have recognized that his actions violated a clearly established law. *Saucier*, 533 U.S. at 201, *overruled in part by Pearson*, 555 U.S. 223, 236 (2009). The plaintiff has the initial burden of proving the right was clearly established. *Harlow*, 475 U.S. at 818.

temporary delay of the return of Lily, was unconstitutional. In fact, law to the contrary indicates otherwise. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (negligent and intentional deprivations of property do not violate the Due Process Clause if adequate and meaningful post-deprivation remedies are available and pre-deprivation hearings were impracticable). Thus, Defendants are entitled to qualified immunity with respect to the Pettits' § 1983 claims for violation of procedural due process.

**C.    State Law Claims**

Because the Court dismissed the Pettits' 42 U.S.C. § 1983 claims, it does not possess supplemental jurisdiction over their state law claims.

## IV. ORDER

It is hereby **ORDERED** that Defendants' motion to dismiss (Dkt. 8) is **GRANTED**, the Pettits' federal claims are **DISMISSED with prejudice,** and their state law claims are **DISMISSED without prejudice** for lack of jurisdiction.

Dated this 31st day of January, 2013.

BENJAMIN H. SETTLE
United States District Judge